| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------X<br>ADAM HAIMOWITZ,<br><br>                               Plaintiff,<br><br>       -against-<br><br>LOWE'S HOME CENTERS, LLC.<br>                               Defendant.<br>----------------------------------------------------------------X | Civ. Case No.<br><br>Plaintiff Demands a<br>Trial by Jury  JUDGE BRICCETTI<br><br><br>**COMPLAINT**<br><br>14 CV 10080 |

Plaintiff, ADAM HAIMOWITZ, by his attorneys, DEREK SMITH LAW GROUP PLLC, hereby complains of Defendant upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. Seq. ("Title VII"), 42 U.S.C. 1981 and to remedy violations of the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed, discriminated and retaliated against by his employer on the basis of sex/gender, sexual orientation, race, and religion.

2. At all times material, Defendant engaged in a pattern and practice of discriminating against employee because of their sexual orientation and in discriminating against employees for failing to adhere to the stereotypical gender roles.

## JURISDICTION AND VENUE

3. Jurisdiction of this action is conferred upon the Court as this action involves Diversity of Citizenship under 28 U.S.C. §1332. Plaintiff is a citizen of the State of New York and Defendant is a foreign limited liability company with its principal place of business in the State of South Carolina.

4. None of the member of Defendant is a citizen of the State of New York.

5. The matter in controversy exceeds $75,000.

6. Venue is proper in that the events occurred in Rockland County, within the Southern District of New York.

7. On or about September 3, 2014 Plaintiff filed a charge with the EEOC alleging sexual harassment, gender discrimination and retaliation as set forth herein.

8. On or about December 5, 2014 the EEOC issued a Right to Sue Letter.

9. This action is being commenced within 90 days of receipt of that Right to Sue Letter.

10. This action is also properly brought in Federal Court in that it involves a question of federal law, Title VII of the Civil Rights Act of 1964.

## PARTIES

11. Plaintiff HAIMOWITZ is a gay male residing in the State of New York, County of White Plains.

12. At all times material, Defendant LOWE'S HOME CENTERS, LLC (hereinafter also referred to as "LOWE'S") is a foreign limited liability company duly existing pursuant to and by virtue of the laws of the State of North Carolina.

13. Defendant LOWE'S operates a chain of retail home improvement and appliance stores.

14. On or about November 7, 2003, Plaintiff HAIMOWITZ began his employment with Defendant as a cashier at Defendant's retail store located on 206 Route 303 Orangeburg, New York 10962. Over the years, Plaintiff was promoted to Flooring specialist.

15. Throughout his employment, Plaintiff was sexually harassed, and discriminated against for his sexual orientation and failing to adhere to the stereotypical gender roles.

16. By way of example, in or around 2005, Brian Denning, one of Plaintiff's Managers, asked Plaintiff to "suck [his] dick." Plaintiff reported this incident to Human Resources but no action was taken against Defendant, and the harassment continued.

17. On a daily basis, Robert, another employee at Defendant would mock Plaintiff on account of his sexual orientation. By way of example, when same-sex marriage became legal in New York, in or around July 2011, Robert said to Plaintiff: "Great, now you can marry me!"

18. On another occasion, Robert removed his shirt in front of Plaintiff and other coworkers and said to Plaintiff showing his hips: "So Adam, what do you think of this?"

19. On many occasions, Robert would say to Plaintiff that he "should fold carpets" because he did not want Plaintiff "to get hurt" and that he "should leave the heavy lifting to the guys" thus stating that Plaintiff was a woman because he did not conform to the stereotypical male. Plaintiff was extremely offended by these comments, but he did not quit because he needed the money and liked the other aspects of his job.

20. On or about December 11, 2011, Plaintiff cut his finger on a carpet cutting machine. As Plaintiff was rushing to the bathrooms to wash his finger, Adan, a coworker, said to another employee that was walking with Plaintiff: "Watch out! You don't want to get AIDS." Plaintiff found this comment extremely hurtful and insulting.

14. At all times material, Defendant's Human Resources Department was aware of the situation but conducted no investigation and did not address the issue.

15. Plaintiff was not the only employee at Defendant to experience severe sexual harassment and discrimination. Plaintiff also witnessed one of his coworkers, Edward Marse, suffer from sexually harassing homophobic remarks and a hostile work environment while working for Defendant.

16. Defendant was fully aware of the rampant discrimination towards gay males because of the complaints brought by Edward Marse.

17. In or around March 2011, Edward Marse filed a charge with the EEOC, followed by a complaint in Federal Court.

18. In or around January 2012, Plaintiff was deposed and testified on behalf of Edward Marse in his Federal action. During the deposition, Plaintiff admitted to being in a similar situation as Edward Marse, and said he was also experiencing sexual harassment and discrimination for his sexual orientation.

19. As a result of Plaintiff's participation in Edward Marse's deposition, Plaintiff suffered escalating sexual harassment and sex discrimination while working for Defendant.

20. In or around March 2014, Plaintiff was called a "whore" by his Department Manager Victoria Ambrose. When Plaintiff asked her why she was calling him that obscenity, she stated that "Gay people sleep around and they are known for it." Plaintiff made a formal complaint to Human Resources but Defendant failed to take any action against Plaintiff's Department Manager and

continued to ignore Plaintiff's complaints.

21. In or around April 2014, Defendant and Edward Marse signed a settlement agreement.

22. In or around May 2014, Plaintiff was written up due to an alleged "time and attendance infraction." Plaintiff complained to Bert Brito, the Human Resources' District Manager that other employees came and went as they pleased and were never written up and that he was a victim of retaliation for his testimony in Edward Marse's Federal action. Plaintiff added that he felt he was being discriminated against because he was gay. Bert Brito refused to waive the sanction. Plaintiff wrote that he disagreed with the Human Resources' decision and signed the form. Later on, he received a copy of the form but noticed that the paragraph mentioning his disagreement had been removed. Defendant was clearly retaliating against Plaintiff for having testified in support of Edward Marse as well as being gay himself and his complaints.

23. A week later, Plaintiff was written up for the second time for allegedly placing a carpet piece down in the wrong way and for using strong language on the sales floor. Plaintiff complained again to Bert Brito, stating that he felt he was being targeted for being gay. Plaintiff also asked why Defendant had ignored all his written complaints. Bert Brito merely replied: "You have to let the past be the past and revaluate yourself." Rather than addressing the situation, Bert Brito was blaming Plaintiff for his identity as a gay man.

24. After being written up twice, Plaintiff received a "final warning" by the store Manager Frank Del Tuffo. An employee at Defendant would normally receive a final warning after being written up three times, meaning that a fourth incident would lead to the employee's termination. Once again, Plaintiff felt that he was being set up for termination, and retaliated against for his sexual orientation and because he testified.

25. In or around June 2014, Department Manager Victoria Ambrose looked at Plaintiff's chest and told

Plaintiff that he must have been happy to see her since his nipples were showing through his shirt and it looked like Plaintiff HAIMOWITZ "ha[d] three nipples." Coworker Kay Downer then started calling Plaintiff "Tittyman" on the sales floor in front of customers and coworkers. Plaintiff was extremely humiliated.

26. On or about July 1, 2014, Plaintiff received an email from his Department Manager, Victoria Ambrose, stating that Plaintiff was not a "team player" and giving him advice to improve his performance. Plaintiff was surprised by this email and spoke with Lou Ricciardi, the Assistant Store Manager, who also received the email and disagreed with its content. Lou Ricciardi attested to Plaintiff's exemplary performance and said he did not understand why Plaintiff was being targeted by Defendants.

27. On or about July 25, 2014, Plaintiff was interviewed by Allen Soden, a Human Resources' Manager regarding his relationship with Mike, one of Plaintiff's coworkers. Plaintiff said he asked Mike whether he ever took dance classes or played any sports when he was younger. Their conversation revolved around a friend of Plaintiff who used to dance and had big calves. Plaintiff also said to Allen Soden that on two occasions he had complimented Mike on his tattoo or his shirt. Once again, Plaintiff felt Defendant was trying to build a case against him in order to terminate his employment as unlawful retaliation.

28. On or about July 31, 2014, Kay Downer, one of Plaintiff's coworkers, said to Plaintiff "Hey Jew Boy, you remind me of those guys from Spring Valley. All you need is the curly thing on the sides of your head!" Plaintiff was very insulted and taken aback by this discriminatory comment. Plaintiff is a member of the Jewish faith, which he considers his religion and race. On many occasions, Kay Downer told Plaintiff that she would never help a Hasidic Jew and that "Jamaicans don't like gay people." Kay Downer is a Jamaican woman.

29. At all times material, Plaintiff's Department Manager, Victoria Ambrose, was aware that Plaintiff was a victim of Kay Downer's discriminatory comments, but Defendant did not take any action to remedy the harassment.

30. On or about August 1, 2014, Plaintiff reported to Human Resources that he had been told by Robert "to stick with administrative work" because that is what Plaintiff was "good at" and "to leave the lifting to the guys." Once again, Plaintiff was extremely offended.

31. On that same day, Plaintiff made six written complaints to Human Resources, where he reported the sexual harassment and hostile work environment he had to endure on a continuous and daily basis. Later on, Plaintiff had a telephone conversation with Lisa Branch from Employee relations, whereby she asked Plaintiff about the comments he allegedly made to co-worker Mike.

32. On or about August 4, 2014, Plaintiff called Bert Brito and told him that he was having anxiety attacks and chest pains due to the very hostile environment he was working in and the fact that his complaints were not addressed. Plaintiff thus requested to be transferred to another store. This request was not granted.

33. On or about August 5, 2014, Lisa Branch questioned Plaintiff about his written complaints and then said that Plaintiff was alleged to have made inappropriate comments to Mike, co-worker at Defendant and that he could face disciplinary sanctions. Rather than addressing Plaintiff's complaints, Defendant made up false accusations in an attempt to set Plaintiff up for termination.

34. From then on, the sexual harassment and derogatory comments from Plaintiff's co-workers continued to get worse.

35. On or about August 9, 2014, Plaintiff was told by Adan that what would make him feel better would be "to go home and jerk off with Crisco." Plaintiff was extremely distraught by this

comment and again complained to Human Resources.

36. On that same day, Yves, another employee at Defendant, went behind Plaintiff, put his hand on his shoulder, then slid his hand along his right side and squeezed his side. Plaintiff made another written complaint to Human Resources.

37. On or about August 16, 2014, Ralph, another employee at Defendant, called Plaintiff a "man-whore" and that he could "put the pallet up [his] ass." On another occasion, Ralph referred to Plaintiff as a "child molester" because Plaintiff's boyfriend looked young.

38. Later on that day, Plaintiff witnessed John Dillone referring to another coworker as "maticon" which means "effeminate gay man" in Spanish. On another occasion John Dillone also called Edward Marse a "maticon." Plaintiff was very offended by this language and made a written complaint to Human Resources.

39. On or around August 17, 2014, as Plaintiff was walking to the break room, Adan said to him "Good morning Sunshine!" As they were entering the break room, Victoria Ambrose said to Plaintiff: "Hey Fagettron, Do you want a drink?" Plaintiff tried to ignore them and went back to the sales floor. Adan then started talking to Plaintiff about dolphins. Plaintiff explained that he went on vacation to Mexico and swam with dolphins. Adan stated: "These were dirty dolphins then. You know, those Mexican dolphins will steal your social security number and sell it." Plaintiff was stunned by this comment. In front of another coworker, Adan asked Plaintiff to follow him to show him a display. They walked to a clear tube with tennis balls in it and a hose attached at the top. Adan gave the hose to Plaintiff and said: "Suck on balls, do what you're good at!" Plaintiff walked away in a state of shock and reported the incident to Human Resources.

40. On or around August 18, 2014 Plaintiff was terminated under the pretext of "making

inappropriate comments to another associate on the sales floor."

41. Plaintiff was clearly retaliated against for complaining of sexual harassment, because of his sexual orientation and discrimination and for testifying on behalf of Edward Marse.

42. During Plaintiff's employment at Defendant, Plaintiff experienced severe anxiety and depression as a result of Defendant's discriminatory, unprofessional, degrading, condescending and hostile treatment toward Plaintiff.

43. Plaintiff had also begun to suffer extreme levels of physical and mental stress.

44. Plaintiff became very concerned about the sexual harassment, hostile treatment and generally unprofessional treatment he was receiving from Defendant.

45. At all times material, Plaintiff's supervisors were aware of the conduct mentioned herein.

46. Despite Plaintiff's multiple attempts to end Defendant's discriminatory conduct, Defendant took no action to remedy the harassment.

47. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

48. Throughout his employment, almost on a daily basis, Defendant would make some form of offensive comment regarding Plaintiff's sexual orientation. The above are just examples of those types of comments.

49. As a result of the acts and conduct complained of herein, Plaintiff will suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

50. Plaintiff will also suffer future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

51. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendant.

52. Plaintiff seeks back and front pay, all lost wages and earning capacity, punitive damages, damages for emotional distress and attorney's fees.

## AS A FIRST CAUSE OF ACTION
## UNDER TITLE VII
## FOR DISCRIMINATION

51. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

52. Title VII states in relevant parts as follows: SEC. 2000e-2. *[Section 703]*(a) Employer practices. It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

53. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of his sex.

## AS A SECOND CAUSE OF ACTION
## UNDER TITLE VII
## **FOR RETALIATION**

54. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

55. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because

[s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

56. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. § 2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendant.

## AS A THIRD CAUSE OF ACTION
## UNDER 42 U.S.C. SECTION 1981
## DISCRIMINATION AND RETALIATION

57. Plaintiff, individually and on behalf of all persons similarly situated, repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

58. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

62. Plaintiff, as a member of the Jewish Race, was discriminated against by Defendants because of his race as provided under 42 USC Section 1981 and has suffered damages as

set forth herein. Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendants' unlawful employment practices.

## AS A FOURTH CAUSE OF ACTION
## UNDER STATE LAW
## FOR DISCRIMINATION

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

64. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice:

    (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

65. Defendants violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of his sex, sexual orientation, race, religion, together with sexual harassment and retaliation.

## AS A FIFTH CAUSE OF ACTION
## UNDER STATE LAW
## RETALIATION

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

67. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

68. New York State Executive Law further provides that it is unlawful "For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

69. Defendants violated the sections cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION
## UNDER STATE LAW
## FOR DISCRIMINATION

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

"For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

72. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS SEVENTH CAUSE OF ACTION
## UNDER TITLE VII – RETALIATION UNDER PARTICIPATION CLAUSE

73. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

74. The participation clause forbids retaliation against an employee who "has made a charge, testified, assisted, or participated in any manner" in a protected proceeding. 42 U.S.C. § 2000e-3(a). The term "testify" has a plain meaning: "[t]o bear witness" or "to give evidence as a witness." Black's Law Dictionary 1476 (6th ed.1990).

75. Defendants violated the above clause by retaliating against Plaintiff because she was a witness and/or potential witness in a Discrimination matter as set forth herein.

## JURY DEMAND

Plaintiff demands a jury on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully demands against Defendants in an amount which exceeds the jurisdiction of all lower courts and issue:

(a) An award to Plaintiff of compensatory damages in an amount to be determined at trial for all damages including but not limited to lost wages, past and future as well as for the humiliation, pain and suffering and emotional distress sustained;

(b) An award of punitive damages in an amount to be determined at trial;

(c) An award to Plaintiff of the costs of this action, including their reasonable attorney's fees to the fullest extent permitted by law;

(d) Reinstatement under acceptable conditions; and

(e) Such other and further relief as this Court deems necessary and proper.

Plaintiff demands a trial by jury as to all issues so triable.

Dated: December 17, 2014
New York, New York

DEREK SMITH LAW GROUP, PLLC
Attorneys for Plaintiffs

By: _____
Derek T. Smith, Esq.
30 Broad Street, 35th floor
New York, New York 10004
(212) 587-0760